NEVADA INDUSTRIAL COMMISSION, Appellant, v. PETER DEMOSTHENES, as the Father and Guardian of Elias Demosthenes, a Minor, Respondent.

No. 3360

August 26, 1942.                    128 P. (2d) 746.

*C. E. Horton,* of Ely, for Appellant.

*Gordon W. Rice,* of Reno, for Respondent.

**OPINION**

By the Court, TABER, J.:

On March 27, 1940, Elias Demosthenes, a minor and employee of Velvet Ice Cream Company, a corporation, was hauling some boxes in a company truck to the corporation's new location in the city of Reno. It was snowing heavily, and when he reached a street intersection the driver of another car, proceeding south, lost control of his vehicle, which collided with the ice cream company's truck, threw Demosthenes out and ran over him. He was taken to a hospital where he remained for fourteen days. For about a month after leaving the hospital he continued to visit the doctor who had attended him while in the hospital. He was totally

disabled for more than a month after the accident happened. All the hospital expenses, including the services of two nurses, but not including the services of the doctor, were paid by respondent, who is Elias's father and guardian, and secretary-treasurer of said corporation. The doctor has not been paid for any of his services.

Some years before the accident the corporation elected to be governed by the provisions of the Nevada industrial insurance act, and since that time has paid all premiums and made all reports required by that act. The original act is chapter 111 of the 1913 Statutes of Nevada, pp. 137–153. As amended to the year 1929, the act is to be found in vol. 2, N. C. L. 1929, sections 2680–2731. Further amendments to and including the year 1941 appear in vol. 1 of the 1931–1941 supplement to N. C. L. 1929, at pp. 310–325.

Within two or three days after the accident the corporation filled out and signed, on one of the regular forms issued by appellant, an "Employer's Report of Accident to Employee." This report was mailed to appellant and received by it on April 1, 1940. The report was not sent by registered mail.

On three separate occasions, once in April, another time in May, and the last time in June 1940, respondent went from Reno to the office of the commission in Carson City for the purpose of filing an accident claim for his son Elias. On the first occasion the chairman of the commission was absent, and the others in the office were unable to find certain files. On the second visit the chairman was absent in another city on official business, and was not expected back for two weeks. Respondent made his third visit to the office of the commission in the first part of June. The chairman asked him what he wanted, to which respondent replied: "I came over to file a claim for the injury of my son when working for the Velvet Ice Cream Company." Thereupon another man in the office told respondent that he had no claim,

adding: "The boy has been working there and you have not been reporting him." Respondent attempted to explain that his son had only commenced to work for the corporation early in March, but the other man repeated that respondent had no claim and then said: "You better leave us alone and get out." This man then left through the back door, and respondent, after waiting a couple of minutes, asked the chairman whether he could file his claim for the injury. The chairman then also informed respondent that he had no claim and refused to allow him to file "any kind of a claim."

Elias Demosthenes had never worked for the corporation until it employed him early in March 1940. His name, therefore, had never appeared previously in the monthly pay roll reports made by the corporation to the commission. The occasion of his being employed by the corporation in March 1940 was the moving of its equipment to a new location, requiring the hiring of some five or six extra men, Elias being one of them. After he commenced working for the corporation, his name was included in the monthly pay roll reports while he continued in its employ.

The doctor's bill for professional services amounted to $150. He has at all times billed respondent for his services and has never filed a claim with the commission. Appellant admits that if he had filed such a claim it would have been rejected. The hospital bill, exclusive of nursing, amounted to $147.40. The nurses' bills aggregated $102. The expenses for X-rays amounted to $75.

Appellant refused to pay any of the foregoing, and respondent commenced action in the Second judicial district court, Washoe County. That court, after trial on the issues joined, awarded respondent (plaintiff) a judgment for the full amount of the said expenses and services, also for $30 for one month's compensation, and for costs amounting to $54.40, making a total of $558.80. Defendant's (appellant's) motion for a new

trial was denied, and this appeal is from said judgment and from the order denying a new trial.

In the original industrial insurance act there was no provision relating to "accident benefits"; but in 1917, section 23 was amended so as to provide for such benefits. Stats. of Nevada, 1917, chap. 233, pp. 439–441. This section was further amended in 1919, 1925, and 1941. The 1925 amendment, Stats. of Nevada, 1925, chap. 61, p. 97, which remained in effect until March 7, 1941, may be found in vol. 2, N. C. L. 1929, section 2704. The first paragraph reads: "Every injured employee within the provisions of this act shall be entitled to receive, and shall receive promptly, such medical, surgical and hospital or other treatment, including nursing, medicines, medical, and surgical supplies, crutches, and apparatus, including artificial members, as may reasonably be required at the time of the injury and within six months thereafter, which may be further extended by the Nevada industrial commission for and additional period of one year. The benefits conferred by this paragraph upon the injured employee shall hereafter be termed 'Accident Benefits.' " The section further provides for the collection of pay roll premiums from employees in order to provide a fund to take care of such accident benefits. In the same section it is provided that: "The state insurance fund provided for in this act shall not be liable for any accident benefits provided by this section, but the fund provided for accident benefits shall be a separate and distinct fund, and shall be so kept." There is also a provision in said section that upon the occurrence of an injury to an employee, the employer, after first rendering all necessary first aid, "shall forthwith notify the commission of such accident, giving the name of the injured employee, the nature of the accident and where and by whom the injured employee is being treated, and the date of the accident."

In the same 1917 act which amended said section 23 there was added a new section numbered 34½. Stats.

of Nevada, 1917, chap. 233, p. 448, N. C. L. 1929, section 2716. This section reads as follows: "Notice of the injury for which compensation is payable under this act shall be given to the commission as soon as practicable, but within thirty days after the happening of the accident. In case of the death of the employee resulting from such injury, notice shall be given to the commission as soon as practicable, but within sixty days after such death. The notice shall be in writing and contain the name and address of the injured employee and state in ordinary language the time, place, nature and cause of the injury and be signed by said injured employee, or by a person in his behalf, or in case of death, by one or more of his dependents or by a person on their behalf. No proceeding under this act for compensation for an injury shall be maintained unless the injured employee, or some one in his behalf, files with the commission a claim for compensation with respect to said injury within ninety days after the happening of the accident, or, in case of death, within one year after such death. The notice required by this section shall be served upon the commission, either by delivery to and leaving with it a copy of such notice, or by mailing to it by registered mail a copy thereof in a sealed, postpaid envelope addressed to the commission at its office, and such mailing shall constitute complete service; the failure to give such notice or to file such claim for compensation within the time limit specified in this section shall be a bar to any claim for compensation under this act, but such failure may be excused by the commission on one or more of the following grounds: (1) That notice for some sufficient reason could not have been made. (2) That failure to give such notice will not result in an unwarrantable charge against the state insurance fund. (3) That the employer had actual knowledge of the occurrence of the accident resulting in such injury. (4) That failure to give notice was due to employee's or beneficiary's mistake or ignorance of fact or of law, or

of his physical or mental inability, or to fraud, misrepresentation or deceit."

Appellant contends that no recovery should have been allowed in this case, for the reason that no notice was given nor claim filed as required by section 34½ of the industrial insurance act, section 2716 N. C. L. 1929. It is respondent's contention that said section applies only to claims for compensation as distinguished from accident benefits. With respect to the $30 allowed by the trial court as compensation for one month's disability, respondent claims that no notice under said section was necessary in view of the commission's conduct in telling appellant that he had no claim and in refusing to allow him to file one. Respondent further contends that appellant should not be heard to say that no claim for compensation was filed after refusing to permit him to file such a claim. He also takes the position that the filing of his action in the lower court satisfied the statute requiring notice and claim.

In considering whether section 2716 N. C. L. 1929 applies to claims for accident benefits, we have examined the entire industrial insurance act. In addition to sections 2704 and 2716 N. C. L. 1929 the court has given particular attention to certain provisions of the act to which attention has been directed by the respective parties. As tending to show that section 2716 applies to claims for accident benefits, appellant cites section 2681, section 2 of the act, the last paragraph of section 2706, and section 2713 (b).

Section 2681 N. C. L. 1929: "No compensation under this act shall be allowed for an injury caused: (a) By the employee's willful intention to injure himself or to willfully injure another; nor shall compensation be paid to an injured employee if injury is sustained while intoxicated." This section has remained unchanged since the act was passed in 1913.

Last paragraph of section 2706 N. C. L. 1929: "No compensation shall be payable for the death or disability

of an employee, if his death be caused by, or insofar as his disability may be aggravated, caused or continued by, an unreasonable refusal or neglect to submit or to follow any competent and reasonable surgical treatment or medical aid."

Section 2713(b) N. C. L. 1929: "If any employee shall persist in insanitary or injurious practices which tend either to imperil or retard his recovery, or shall refuse to submit to such medical or surgical treatment as is reasonably essential to promote his recovery, the commission may, in its discretion, reduce or suspend the compensation of any such injured employee." This subdivision was enacted before there were any accident benefit provisions in the act.

Appellant contends that in reason the three foregoing statutory provisions should apply to accident benefits as well as to other forms of compensation.

Section 2708 N. C. L. 1929, cited by respondent, reads: "No compensation shall be paid under this act for an injury which does not incapacitate the employee for a period of at least seven days from earning full wages, but if the incapacity extends for a period of seven or more days, such compensation shall then be computed from the date of the injury." Respondent contends that it would be unreasonable to deprive an employee, otherwise within the provisions of the act, of accident benefits simply because his incapacity does not extend for a period of more than seven days, though the latter fact may be reasonable ground for barring him from compensation.

The foregoing statutory provisions cited by the respective parties give rise to some doubt and uncertainty regarding the construction to be placed upon the word "compensation" as used in section 2716; but the language of section 2704 and that of section 2716 indicate that the latter section is not applicable to the former.

It will be noted that section 2704 uses the expression "accident benefits" many times, while the word "compensation" does not occur once therein. Section 2716,

on the other hand, uses the word "compensation" many times, but does not once employ the expression "accident benefits." By the express provisions of the first paragraph of section 2704 the benefits conferred by that paragraph "shall hereafter be termed 'Accident Benefits.'" As we have seen, sections 2681 and 2713(b), two of the provisions relied on by appellant were enacted before the industrial insurance act contained any accident benefit provisions; but the other provision (last paragraph of section 2706) has been amended four times since section 2704 became law, yet in none of these amendments does the expression "accident benefits" occur, but only the word "compensation." This, according to appellant, shows that the legislature intended "compensation," as used in that provision, to include accident benefits. Respondent, on the other hand, argues that it shows either a deliberate intent on the part of the legislature that accident benefits were not to be included in "compensation," or that in amending said provision accident benefits were entirely overlooked.

More significant than any of the foregoing is the language in that part of section 2716 which states the grounds upon which the commission may excuse failure to give notice or to file a claim. The second ground is that failure to give such notice will not result in an unwarrantable charge against the *state insurance fund.* If the legislature, in adding section 34½, section 2716 N. C. L. 1929, to the industrial insurance act had had accident benefits in mind, it would naturally have used the words "accident benefits fund," or words of similar import, as well as "state insurance fund," because, as we have seen, section 2704 expressly provides that the fund provided for accident benefits shall be a separate and distinct fund. An unwarrantable charge against the accident benefits fund would constitute as good a reason for refusing to excuse failure to give notice or to file a claim as would an unwarrantable charge against the state insurance fund.

Unless barred by the provisions of section 2716, Elias Demosthenes was clearly entitled to accident benefits under the provisions of the industrial insurance act. We are not disposed to deny him his right to such benefits because of a confused and unsatisfactory condition of the statutes, particularly when said section 2716 itself tends to show, either that the legislature deliberately intended that it should not apply to accident benefits, or that, in amending said section, section 2704 was overlooked.

As section 2716 does not apply to claims for accident benefits, there is no procedure specified in the industrial insurance act for presentation of such claims. Where such a situation exists, any reasonable method, pursued within a reasonable time, is sufficient. Respondent's efforts to file his claim were natural, reasonable, and timely.

The court is of the opinion that respondent should have been barred from the $30 allowance for one month's compensation based on his son's temporary total disability. The employer's report to the commission did not constitute a notice signed by the injured employee or by a person in his behalf. Section 2716 not only requires such a notice, but further provides that failure to give such notice shall be a bar to any claim for compensation. If a proper notice had been mailed within the time prescribed, and the commission had admitted that the notice 'was duly received, the court would not bar the claim merely because the notice had not been sent by registered mail or delivered to and left with the commission. But in this case it affirmatively appears that the statutory notice was not given the commission in any manner, or at all. The commission's refusal, in June 1940, to permit respondent to file a claim afforded no excuse for failure to give the notice, though in our opinion it did excuse the failure to file a claim for compensation. We are also clearly of the opinion that the filing of respondent's action in the

district court did not constitute the statutory notice required by section 2716.

The order denying a new trial is affirmed. The judgment is reduced from $558.80 to $528.80, and as so modified is affirmed. Costs on this appeal are awarded to respondent.